IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 09-10071-CIV-MOORE/SIMONTON

HEMISPHERX BIOPHARMA, INC.,

       Plaintiff,

v.

MID-SOUTH CAPITAL, INC., ADAM CABIBI,
and ROBERT L. ROSENSTEIN,

       Defendants.

_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTIONS TO DISMISS

THIS CAUSE came before the Court upon Defendants' Motions to Dismiss Plaintiff's

Complaint (dkt #'s 11, 23). Responses (dkt #'s 19, 26) and Replies (dkt #'s 22, 27) were also

filed.

UPON CONSIDERATION of the Motions, Responses, Replies, the pertinent portions of

the record, and being otherwise fully advised in the premises, the Court enters the following

order.

## I.   BACKGROUND

This case involves a claim for tortious interference with an advantageous business

relationship. Plaintiff Hemispherx Biopharma, Inc. ("Hemispherx"), is a pharmaceutical

research and development company focusing on treatment of certain viral diseases and cancers.

(Compl. ¶ 3.) Hemispherx is a Delaware corporation with its principal place of business in

Philadelphia, Pennsylvania. Id. Defendant MidSouth Capital, Inc. ("MidSouth"), is a broker-

dealer and investment bank incorporated in South Carolina with its principal place of business in

Atlanta, Georgia. Id. ¶ 4. Defendants Adam Cabibi ("Cabibi") and Robert L. Rosenstein

("Rosenstein") are Georgia residents employed at Midsouth's Atlanta headquarters.[1] Id. ¶ 5.

In June of 2008, Midsouth approached Hemispherx and offered to help raise capital needed by Hemispherx for its research and business operations. Hemispherx, however, never hired MidSouth. Id. ¶ 8-9. On November 25, 2008, MidSouth, through Cabibi and Rosenstein, sent an investment proposal it had assembled to Hemispherx. Id. ¶ 10. Hemispherx reviewed the proposal and paid some of the prospective investors' due diligence costs, but ultimately rejected the proposal. Id. MidSouth sent a second investment proposal to Hemispherx on December 17, 2008, which included Hudson Bay Capital, Inc ("Hudson Bay") as one of various investors. Id. ¶ 11. Hemispherx also reviewed and rejected this second proposal. Id.

In May of 2009, Hemispherx's Chief Executive Officer, William Carter, M.D. ("Carter"), advised MidSouth that Hemispherx was speaking with other investment bankers and did not want to review further proposals from MidSouth. Id. ¶ 12. Carter also advised MidSouth that Hemispherx did not want MidSouth to act on its behalf or hold out that it had authority to negotiate on its behalf. Id. On May 6, 2009, Hemispherx entered into a contract with Rodman and Renshaw, an investment bank, to serve as Hemispherx's exclusive agent to attract private investment in Hemispherx. Id. ¶ 13. From May 8, 2009, to May 11, 2009, Rodman and Renshaw entered into negotiations with investors, including Hudson Bay, to secure investments in Hemispherx of approximately $18 million. Id. ¶14. Meanwhile, on May 8, 2009, MidSouth sent another investment proposal to Hemispherx whereby Hudson Bay would make a $5 million invesment in Hemispherx, a proposal that Hemispherx deemed less favorable than the investments Rodman and Renshaw had been negotiating for. Id. ¶ 15.

Upon reviewing MidSouth's proposal, Hemispherx and its financial advisor, Wayne Pambianchi ("Pambianchi"), again advised MidSouth that Hemispherx was negotiating for

---

[1]MidSouth, Cabibi, and Rosenstein are referred to, collectively, as "the Defendants."

significant investment through Rodman and Renshaw and did not want MidSouth interfering with the deal. Id. ¶ 16. Hudson Bay, after further discussion with the Defendants, demanded additional concessions from Hemispherx during Hudson Bay's negotiations with Rodman and Renshaw. Id. ¶¶ 17, 18. The proposal negotiated by Rodman and Renshaw closed on May 11, 2009, and included the additional concessions demanded by Hudson Bay. Id. Also on May 11, 2009, MidSouth sent Hemispherx another written proposal for a $5 million investment from Hudson Bay. Id. ¶ 18. Hemispherx again advised MidSouth that Rodman and Renshaw had an exclusive contract to raise capital for Hemispherx. Id. ¶ 19. Finally, on May 21, 2009, Carter, Cabibi, and Rosenstein held a meeting in Tavernier, Florida, to discuss MidSouth's actions and to advise MidSouth that it was not to send any further proposals, act on behalf of, or hold itself out to investors as an agent for Hemispherx. Id. ¶ 20.

Hemispherx brought this action against the Defendants on June 4, 2009. Hemispherx claims that the Defendants interfered with advantageous business relationships that Hemispherx had developed with investors through its investment bankers, Rodman and Renshaw, costing Hemispherx millions of dollars. Id. ¶ 2. The harm alleged was that the May 8, 2009, proposal sent by MidSouth, "negatively affected [Hemispherx's] negotiations" with Hudson Bay, "ultimately costing Hemispherx options and other terms worth millions of dollars." Id. ¶ 22. Hemispherx also claims that similar interference by the Defendants is ongoing although they have made no specific allegations of such interference. On July 7, 2009, MidSouth Filed a Motion to Dismiss (dkt # 11) Hemispherx's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Midsouth requested that if the Court found venue improper, the case be dismissed or, in the alternative, transferred to the Northern District of Georgia. Defendants Cabibi and Rosenstein filed a Joint Motion to Dismiss (dkt # 23) on July 30, 2009, joining in the

arguments raised by MidSouth in its Motion to Dismiss, subsequent Reply, and accompanying memoranda. Hemispherix filed Responses on July 17, 2009 (dkt # 19) and August 17, 2009 (dkt # 26).

## II.   STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(3), a party may assert the defense of improper venue. Fed. R. Civ. P. 12(b)(3). When a defendant objects to venue under Rule 12(b)(3), the plaintiff bears the burden of showing that the venue selected is proper. See Delong Equipment Co. v. Washington Mills Abrasive Co., 840 F.3d 843, 845 (11th Cir. 1988) (stating that plaintiff must make a prima facie showing of venue); BP Prods. N. Am., Inc. v. Super Stop 79, Inc., 464 F. Supp. 2d 1253, 1256 (S.D. Fla. 2006); Wai v. Rainbow Holdings, 315 F. Supp. 2d 1261, 1268 (S.D. Fla. 2004). "The court must accept all allegations of the complaint as true, unless contradicted by the defendants' affidavits." Wai, 315 F. Supp. 2d at 1268. When an allegation is challenged, the court may then examine facts outside of the complaint to determine whether venue is proper. Id. In examining the record, the court must draw all reasonable inferences and resolve all factual conflicts in favor of the plaintiff. Id.

## III.   ANALYSIS

### A.   Venue

Defendants maintain that this court is an improper venue to hear Hemispherx's cause of action because the actions giving rise to Hemispherx's claim of tortious interference did not occur within the Southern District of Florida. The federal venue statute, applicable in diversity actions, provides that venue is proper in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is

no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a) (2006).  Hemispherx has relied on § 1391(a)(2) as its basis for venue in the Southern District of Florida.  (Compl. ¶ 7).[2]

In enacting the venue statute, Congress intended to protect defendants and "therefore 'meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.'" Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371-72 (11th Cir. 2003) (quoting Woodke v. Dahn, 70 F.3d 983, 985 (8th Cir. 1995)).  While certain kinds of events may be necessary to give rise to the claim, "[o]nly those actions which were, in and of themselves, 'wrongful' or had a 'close nexus' to the wrong could form the basis of proper venue." Forbes v. Lennox Fin. Mortg. LLC, No. 08-60455-CIV, 2008 WL 2959727, at *3 (S.D. Fla. July 30, 2008) (quoting Jenkins Brick Co., 321 F.3d at 1371).  A central purpose of the federal venue statute is to ensure that a defendant is not "hailed into a remote district having no real relationship to the dispute." Woodke, 70 F.2d at 985 (quoting Cottman Transp. Sys., Inc. v. Martinez, 36 F.3d 291, 294 (3rd Cir. 1994)).

1.    Hemispherx's Complaint

Hemispherx contends in its Complaint that venue is proper in the Southern District of Florida because "a substantial part of the events which give rise to the claims asserted herein occurred within this judicial district[.]" (Compl. ¶ 7)  Hemispherx cites the following events in support of its choice of venue: (1) Hemispherx is registered to do business in the state of Florida; (2) Hemsipherx routinely does business and has a meeting facility in this District; (3) MidSouth was registered as a foreign corporation in Florida at the time it proposed raising capital for Hemispherx; (4) MidSouth routinely conducts business in Florida; and (5) many of the

---

[2]Hemispherx incorrectly cited 28 U.S.C. § 1391(b)(2) but clearly intended to cite § 1391(a)(2) as stated later in their Response (dkt # 19).

communications between MidSouth and Hemispherx as well as a meeting between them took place within the Southern District of Florida.  Id.

Even assuming Hemispherx's bases for venue are true, they are inapposite.  Hemispherx focuses largely on its own activities and location, but the proper focus of the venue inquiry is on the relevant activities of the Defendants.  Moreover, the acts described in the Complaint are not what gave rise to Hemispherx's claim.  The basis for the claim was the Defendants' alleged tortious interference with Hemispherx's business relationship with Hudson Bay and Rodman and Renshaw.  The injury alleged is that the May 8, 2009, proposal sent by MidSouth, "negatively affected [Hemispherx's] negotiations" with Hudson Bay, "ultimately costing Hemispherx options and other terms worth millions of dollars."  (Compl. ¶ 22.)  Hemispherx's Complaint is devoid of any allegation that the Defendants' tortious conduct or any acts with a close nexus to the tortious conduct occurred in Florida.  There are no allegations that any communications between Midsouth and Hudson Bay took place within the Southern District of Florida.  The only evidence in the record of any interaction between Defendants and Hudson bay is found in Cabibi's affidavit which states that Hudson Bay contacted Cabibi while Cabibi was in Atlanta.  (Cabibi Aff. ¶ 7)  Moreover, the alleged meeting that took place in the Southern District of Florida occurred on May 21 and 22, 2009, more than ten days after the tortious interference occurred.  (Compl. ¶ 20)

### 2.     The Carter and Pambianchi Declarations

In addition to their Complaint, Hemispherix filed two Declarations in support of its allegations - one from Carter and the second from Pambianchi.  In his Declaration, Carter expounds on the acts Hemispherx cites to support its choice of venue in the Southern District of Florida.  Specifically, Carter notes: (1) numerous phone calls to Carter from Cabibi and Rosenstein regarding proposals to raise capital for Hemispherx received by Carter while he was

in the Florida Keys; (2) 108 phone calls from MidSouth to Carter's Philadelphia cell phone number between October 2008 and May 2009, most of which reached Carter while he was in South Florida; (3) a rejection of MidSouth proposals communicated by Carter while in South Florida; (4) Carter's instruction, while located in the Southern District of Florida, that Defendants stop representing themselves as agents for Hemispherx and as having the authority to negotiate on behalf of Hemispherx; (5) Carter's execution, while located in the Southern District of Florida, of an exclusive agreement for representation by Rodman and Renshaw; and (6) Carter's personal meeting with Cabibi and Rosenstein within the Southern District of Florida on May 21 and 22, 2009, to discuss MidSouth's interference with Hemispherx's negotiations with Hudson Bay. (Carter Decl. ¶ A.)

Carter fails to allege any actions or events with a close nexus to the wrong - Midsouth's interference through its interactions with Hudson Bay - that occurred within the Southern District. Much like Hemispherx's Complaint, Carter's focus is on himself, not the actions of the Defendants. That Carter communicated his rejection of MidSouth's proposals while in the Southern District of Florida is inapposite. The only evidence in the record involving Defendants' actions in regards to the May 8, 2009, proposal is Cabibi's affidavit that clearly states he communicated MidSouth's proposal regarding Hudson Bay from his office in Atlanta to Pambianchi at his office in New Jersey. (Cabibi Aff. ¶ 7.) That Carter eventually reviewed and rejected the proposal while in the Southern District of Florida is tangential to the tortious acts alleged. Only those events that have a "close nexus to the wrong alleged" - MidSouth's interactions with Hudson Bay - "are the proper bases for venue." Forbes, 2008 WL 2959727, at *3 (quoting Jenkins Brick Co., 321 F.3d at 1371). Moreover, as noted above, the meeting between Carter, Cabibi, and Rosenstein on May 21 and 22, 2009 took place more than ten days after the alleged tortious interference occurred. All other allegations by Carter focus on his own

7

acts or location at various times, not the acts or location of the Defendants.

Pambianchi's Declaration reiterates much of Carter's allegations but also sheds further light on the alleged tortious interference. Pambianchi states that the negotiations between Rodman and Renshaw and Hudson Bay were negatively affected by MidSouth's interference. (Pambianchi Decl. ¶ 13) Specifically, Pambianchi alleges that after speaking with Cabibi on May 9, 2009, Hudson Bay demanded further concessions from Hemispherx. Id. ¶ 15, 17. Pambianchi further alleges that instead of telling Hudson Bay that it did not represent Hemispherx, MidSouth conveyed the offer from Hudson Bay to Hemispherx. Id.

Pambianchi also fails to allege that any acts of Defendants having a close nexus to the wrongful action occurred within the Southern District of Florida. Pambianchi makes specific allegations regarding the alleged interference by Defendants. There are no allegations, however, that any of those acts occurred within the Southern District of Florida. The only evidence in the record of any interaction between Defendants and Hudson Bay is Cabibi's affidavit stating that he received a telephone call while in Atlanta from Hudson Bay in which Hudson Bay made an offer of investment in Hemispherix. (Cabibi Aff. ¶ 7.) Hemispherx's Complaint and Declarations do not dispute Cabibi's assertion.

3.      Venue is Improper in the Southern District of Florida

Venue is improper in the Southern District of Florida because Hemispherx has failed to allege that Defendants' tortious conduct or any acts with a close nexus to their tortious conduct, occurred within the Southern District of Florida. Venue is not proper merely wherever a company's Chief Executive Officer happens to be located at a given point in time. To sustain venue in the Southern District of Florida merely because Carter was using his cell phone and reviewing MidSouth's proposals while in Florida would cause the Defendants to be "hailed into a remote district having no real relationship to the dispute." Woodke, 70 F.2d at 985 (quoting

Cottman Transp. Sys., Inc., 36 F.3d at 294). The focus of a venue inquiry is on the defendant and any actions taken by the defendant. Jenkins Brick Co. v. Bremer, 321 F.3d at 1371-72 (quoting Woodke v. Dahn, 70 F.3d at 985). Hemispherx has failed to allege that either the wrong or any actions or events having a close nexus to the wrong, occurred within the Southern District of Florida. Accordingly, based on the foregoing, the Southern District of Florida is an improper venue for this action.

B. Transfer Pursuant to 28 U.S.C. § 1406

Defendants have requested that if the Court finds venue improper, Hemispherx's Complaint be dismissed or, in the alternative, transferred to the Northern District of Georgia. Pursuant to 28 U.S.C. § 1406, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a) (2006). "The decision whether to transfer a case is left to the sound discretion of the district court." Roofing Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc., 689 F.2d 982, 985 (11th Cir. 1982). The interests of justice generally favor transferring a case to the appropriate judicial district rather than dismissing it. See Forbes, 2008 WL 2959727, at *4. A transferee court must sit within a district in which the case originally could have been brought, "both with respect to venue and personal jurisdiction." Id. (citing Hoffman v. Blaski, 363 U.S. 335, 344 (1960)).

Venue is proper in the Northern District of Georgia as all Defendants reside in the Northern District of Georgia.[3] See 28 U.S.C. § 1391(a)(1) (2006) (venue is proper in a judicial

---

[3]Pursuant to 28 U.S.C. 1391(c), a corporation is deemed a resident of any state in which it is subject to personal jurisdiction.

district where any defendant resides, if all defendants reside in the same state). Moreover, the Northern District of Georgia will also have personal jurisdiction over the Defendants pursuant to Georgia state law. See Ga. Code Ann. § 50-2-21(a) ("The jurisdiction of this state and its laws extend to all persons while within its limits, whether as citizens, denizens, or temporary sojourners."). Thus, this case could have originally been brought in the Northern District of Georgia and the Court will transfer the case.

## IV.  CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendants' Motions to Dismiss (dkt #'s 11, 23) are GRANTED IN PART. To the extent the Motions request that this action be transferred to the Northern District of Georgia, the Motions are GRANTED. Pursuant to 28 U.S.C. § 1406(a), the Clerk of the Court is hereby directed to TRANSFER this case to the United States District Court for the Northern District of Georgia. To the extent the Motions request that this action be dismissed, the Motions are DENIED. The Court declines to reach the merits of Defendants' claims under Fed. R. Civ. P. 12(b)(6).

DONE AND ORDERED in Chambers at Miami, Florida this 5th day of November, 2009.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record